UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| RAY and TAMELA HUNT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-0604-JDT-WTL |
| | ) | |
| INDIANA FAMILY & SOCIAL SERVICES | ) | |
| ADMINISTRATION, DIVISION OF FAMILY | ) | |
| & CHILDREN, MARION COUNTY OFFICE | ) | |
| OF FAMILY & CHILDREN, DEBORAH | ) | |
| WRIGHT, and STEPHEN E. DeMOUGIN, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT (Doc. No. 43) and REQUEST**

**FOR ORAL ARGUMENT (Doc. No. 53)[1]**

Tamela Hunt nearly lost her day care business four years ago after a state child

welfare caseworker, acting on a mother's complaint, determined that Mrs. Hunt had

abused a child in her care.  The state revoked her two home child care licenses.

Prosecutors filed a felony child battery charge against Mrs. Hunt following a separate

investigation by the Marion County Sheriff's Department.

But Mrs. Hunt persevered.  She hired an attorney, contested the license

revocations, which allowed her to continue operating her businesses, and, on March 9,

2004, obtained a favorable administrative hearing decision.  In rescinding the license

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

revocations, the administrative law judge concluded that the caseworker's determination of substantiated abuse was wrong.  "The testimony and evidence do not support that [Mrs. Hunt] abused any child."  (Notice Hr'g Decision (Defs.' Ex. G) 7.)   She also prevailed in her criminal proceeding.  The Marion County Prosecutor's office dismissed the child battery charge on January 20, 2004, citing a lack of evidence.

Her ordeal did not come without cost.  She spent thousands of dollars in legal fees defending herself, closed one of her two day care centers, and filed for bankruptcy. So Mrs. Hunt and her husband, Ray Hunt, are seeking to recover damages for the fallout of what they allege was a sloppy and malicious investigation.

The Defendants are the Indiana Family and Social Services Administration ("FSSA"); the Division of Family and Children; the Marion County Office of Family and Children, formerly an FSSA agency but now part of the Indiana Department of Child Services; Deborah Wright, the caseworker who investigated the abuse allegation against Mrs. Hunt; and Stephen E. DeMougin, who directed from November 2003 through January 2005, FSSA's Division of Family and Children, of which the Marion County Office was a part.  (Given that child welfare functions are now consolidated under the Indiana Department of Child Services, the court will refer to the state entities collectively as the "Department" unless it is necessary to distinguish the particular agency involved.)

The Hunts are not merely seeking to balance the books.  Rather, their primary claim is directed at the Defendants' refusal, even after the administrative law judge's

ruling, to remove the child abuse report from a State of Indiana database and to expunge its finding of "substantiated."  They assert that this refusal violated Mrs. Hunt's constitutional rights to due process and equal protection as guaranteed by the Fourteenth Amendment.  They are seeking damages for these violations and injunctive relief.  They want the court to order the Defendants to reverse the "substantiated" child abuse finding and to adopt a general rule requiring such action whenever a judicial finding of no abuse follows a hearing on the merits.

The Hunts filed their Complaint, alleging federal constitutional claims pursuant to 42 U.S.C. § 1983 and state tort claims of defamation and intentional infliction of emotional distress, in Marion Superior Court in Marion County, Indiana, on March 14, 2005.  The Defendants removed the case to this court on April 25, 2005, and filed a Motion for Summary Judgment (Doc. No. 43) on November 21, 2006.  The Hunts filed a Motion for Oral Argument (Doc. No. 53) on January 22, 2007.  This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims to the extent permitted by 28 U.S.C. § 1367.  The Motion for Summary Judgment has been fully briefed, and the court rules as follows.

## I.  BACKGROUND

### A.  The Statutory Framework

The Indiana Legislature has created a fairly detailed scheme for the investigation and reporting of child abuse and child neglect.  *See* Ind. Code §§ 31-33-1-1 to 31-33-26-18.  Among other matters, this scheme sets forth procedures and timetables for

investigating reports of abuse, requires the county office to notify law enforcement upon receiving a report of known or suspected child abuse, provides for the review of substantiated reports by community child protection teams, and makes such reports available to the appropriate courts, prosecutors, and law enforcement agencies. *Id.* § 31-33-8-9.

This scheme has undergone considerable revision in recent years.  In addition to consolidating child welfare services, the Indiana General Assembly has revamped its information collection.  However, formerly, and during the period applicable to this litigation, reports of child abuse were collected in two, overlapping databases.  One was the Child Abuse Registry, also known as the "State Central Registry."  The other was an internal record-keeping system known statutorily as the Automated Child Protection System, and administratively as the "Indiana Child Welfare Information System," of which the Central Client Index is a part.

Access to information in both databases was limited.  Indiana Code § 31-33-17-6 (repealed 2007) governed the release of information in the Registry while § 31-33-18-2 (which has not been repealed) set forth who could access, and under what circumstances, child abuse and neglect information in general.  While restrictive, both statutes allowed persons accused of abuse to obtain any reports about them so long as information was redacted about the person who reported the abuse and any other person whose safety might be endangered.  *See id.* §§ 31-33-17-6(4) (repealed 2007), 31-33-18-2(14).

4

Defendants have not disputed Plaintiffs' general allegation that employers in the child care industry, and adoption and foster care agencies were able to obtain information from both databases by requiring applicants to sign a release form.[2]  (*See* Pls.' Br. Opp'n. 24; Defs.' Reply 5.)

Not all substantiated reports were entered in the Registry.  They became part of this database only when (1) an arrest was made or criminal charges were filed, (2) a court assumed supervision by determining the victim to be a Child in Need of Services or approved a diversion program of "informal adjustment," or (3) when the accused abuser did not comply with an agreed voluntary referral to rehabilitative services.  *Id.* § 31-33-17-2 (repealed 2007).  However, all reports and actions taken by child welfare workers, were recorded in the Indiana Child Welfare Information System.  (Dep. Angela Coulon 71.)[3]

When substantiated reports became part of the Registry, the Division of Family and Children, in most instances, was required to notify the alleged abuser of his or her right to seek an administrative hearing.  Ind. Code § 31-33-17-8(b) (repealed 2007).  If the hearing officer found the report to be unsubstantiated, identifying information in the substantiated report was expunged.  *Id.* § 31-33-19-8 (repealed 2007).  The same was

---

[2]  Although Defendants have not disputed the general allegation, they do dispute the admissibility of a supporting affidavit from Tina Tuley-Lampke (Pls.' Ex. I), on the grounds that Plaintiffs failed to disclose beforehand that she would be a lay or expert witness.

[3]  Plaintiffs and Defendants have submitted depositions from people without identifying them except by name.  According to the State of Indiana on-line telephone directory, Angela Coulon is a Program & Policy Supervisor in the Indiana Department of Child Services.  State Phonebook, http://www.in.gov/phonebook.htm (last visited Aug. 9, 2007).

true if a court overseeing a Child in Need of Services proceeding found that the abuse did not occur, or if a court overseeing a criminal case entered a not guilty verdict or dismissed the charges.  *Id.*  Moreover, identifying information was expunged when the victim reaches 24 years of age and under certain other circumstances.  *Id.*

Alleged abusers had no similar statutory right to an administrative hearing to expunge information from the Central Client Index, although section 31-33-7-6.5 then allowed (as it does now) for the removal of some unfounded reports.[4]  The first sentence states that child abuse or neglect information "may be expunged under [Indiana Code] 31-39-8 if the probative value of the information is so doubtful as to outweigh its validity."  *Id.* § 31-33-7-6.5.  By referring to the other statutory chapter, this permission appears to apply only to records relating to a juvenile court proceeding over a delinquent child or a child in need of services.  *See id.* § 31-39-8-1, 2.  However, the second sentence provides that child abuse or neglect information "shall be expunged if it is determined to be unsubstantiated after (1) an investigation by the department of a report of a child who may be a victim of child abuse or neglect; or (2) a court proceeding."  *Id.* § 31-33-7-6.5.  Nonetheless, until last fall, the Department would remove a finding from the Central Client Index only if ordered to do so by a juvenile court.  (Coulon Dep. 73-74.)

_____

[4]  The Indiana Administrative Orders and Procedures Act, which requires hearings under specified circumstances, does not apply to determinations by the Division of Family and Children.  *Id.* § 4-21.5-2-6.

In October 2006, to remain eligible for federal funds, the Indiana Department of Child Services adopted an appeals process for removing information from the Central Client Index.  (*Id.* at 76.)  The Department did not apply this policy retroactively, however.  (*See id.* at 74.)  So, the rule change was of no help to the Hunts.

The distinction between the two databases may now be irrelevant.  The General Assembly this year repealed the statutes establishing the Child Abuse Registry (Ind. Code §§ 31-33-17-0.5 to -10), the right to an administrative hearing to expunge reports from the Registry (*id.* §§ 33-33-19-1 to -9), and the Automated Child Protection System, of which the Central Client Index was a part (*id.* §§ 33-33-20-1 to -5).  Effective July 1, 2007, the state created a Child Protection Index, apparently consolidating its information into one database.  *See id.* §§ 33-33-26-1 to -18.  The new scheme contains provisions for notice and administrative hearings to challenge substantiated finding of abuse or neglect.  *Id.* §§ 31-33-26-8(b), -9.  It appears to have eliminated the former discrepancies between information in the Registry and the Central Client Index.

### B.  State Proceedings Against Mrs. Hunt

The Hunts' troubles stem from December 31, 2002, when they offered overnight child care in their home while parents celebrated New Year's Eve.  The Department subsequently received a report that Mrs. Hunt had shaken a six-year-old boy in her care, leaving bruises on his arms.  In early January 2003, caseworker Wright spoke with the boy, his parents and the mother of two friends who had been with the boy that night, and took pictures of the bruises.  (Defs.' Ex. E 2-3.)  She also spoke with the Hunts, and

7

Mrs. Hunt said she grabbed the boy by the arms but only to move him aside as she tripped and fell to the floor.  (Wright Dep. 48-49.)  Ms. Wright discussed her investigation with her supervisor, who told her to declare the abuse substantiated because of the boy's statements and the bruises.  (*Id.* at 50.)  Mrs. Hunt alleges Ms. Wright informed them within the first five minutes of their meeting that she was going to substantiate the abuse.  (Tamela Hunt Aff. ¶ 6.)  Ms. Wright completed her case report, substantiating the abuse, on March 4, 2003.  (Defs.' Ex. E 1.)

The finding of substantiated abuse was reported to FSSA's Bureau of Child Care, which revoked Ms. Hunts' day care licenses.  (Decl. Ronald G. Doyon (Defs.' Ex. F) ¶¶ 4-5.)  The Department notified Mrs. Hunt of this action on March 17, 2003.  (Defs.' Ex. G.)  She appealed the revocation on April 18, 2003, and was allowed to continue operating her businesses while the appeal was pending.  (Doyon Decl. ¶¶ 6-7.)

The Hunts have numerous concerns about Ms. Wright's investigation.  They question why Ms. Wright did not interview other children who were present.  (Pls.' Br. Opp'n 13-15.)  They also note that they had a payment dispute with the victim's parents, who were also responsible for paying the fees of the two friends that were the only alleged witnesses.  (Notice Hr'g Decision 2-3.)  (The administrative law judge, in her decision of March 9, 2004, noted several factors that questioned the reliability of the parents' and boys' testimony.  (*Id.* at 6-7.))

The impact of the abuse investigation and revocation proceedings on Mrs. Hunt's business is unclear.  Mrs. Hunt has testified that she closed one of her homes because

parents had withdrawn their children after learning of the substantiated report.  (Tamela Hunt Aff. ¶ 11.)  However, in a January 24, 2005, letter to Director DeMougin, she wrote that all her customers knew about the allegations and supported her.  (Defs.' Ex. H 8.)  She stated, "I have not lost one parent because of this in my daycare home."[5]  (*Id.*)

After the criminal charges were dismissed, an attorney representing the Hunts wrote a notice of tort claim on February 5, 2004, to the Indiana Attorney General and other officials.  (Defs.' Ex. M 4-5.)  (This was 338 days after Ms. Wright's decision to substantiate the abuse report but thirty-three days before the administrative law judge's decision and, conceivably, within the 270-day deadline for notice under the Indiana Tort Claims Act for some claims.)  However, there is no evidence that the notice letter was ever mailed.  Her former attorney has been unable to locate a certified mail return receipt.  (*Id.* at 3.)  The Indiana Attorney General's Office does not have any record of a tort claim notice filed by, or on behalf of, Ray or Tamela Hunt.  (Michael R. Ward Decl. ¶ 4.)

After the administrative law judge issued her decision, supported by thirty-seven conclusions of law and forty findings of fact, Mrs. Hunt wrote Mr. DeMougin, twice to ask him to remove the record of a substantiated report from the Registry and a third time seeking the removal of her name from any substantiated finding.  (Defs.' Ex. H 10-13.)  At some point, Mr. DeMougin responded that he was satisfied by how the Marion County Office of Family and Children had reached its decision and suggested she

---

[5]  These reports are not necessarily contradictory.

9

consult with an attorney about getting a judge to change the substantiation

determination.  (*Id.* at 14.)

Although Mr. DeMougin's later testimony suggests his authority to reverse a

caseworker's finding (*see* DeMougin Dep. 48), the Department considered the license

revocation decision to be irrelevant to the caseworker's determination (*see* Coulon Dep.

72).  Mr. DeMougin said he was told there were differing levels of proof between a

substantiation decision and an administrative law judge's decision.  (DeMougin Dep.

52.)  However, when told to assume the administrative law judge had based her

decision on a preponderance of evidence standard, Mr. DeMougin replied that, if so, he

could not think of any reason why the decision would "be maintained."  (*Id.* at 54.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  An issue of fact is material if it could affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court must consider all

evidence, and draw all reasonable inferences therefrom, in the light most favorable to

the nonmoving party.  *See id.* at 255.  The moving party "bears the initial responsibility"

of identifying specific facts within the record that "demonstrate the absence of a genuine

issue of material fact." *Celotex*, 477 U.S. at 323.  When a motion for summary judgment is made and properly supported, the non-moving party may not rest on the pleadings or denials but must set forth the specific evidence showing there is a genuine issue of material fact that requires a trial.  Fed. R. Civ. P. 56(e).  A mere scintilla of evidence will not do.  *Anderson*, 477 U.S. at 252.  At the summary judgment stage, the judge's function is "to determine where there is a genuine issue for trial."  *Id.* at 249.

## III.  DISCUSSION

This case raises numerous questions regarding the Department's handling of substantiated complaints.  An administrative law judge determined the caseworker's finding to be wrong, and this court has not found any statute or administrative regulation that precluded officials from considering the judge's decision to be the Department's final determination and therefore either revising the finding as an internal matter or expunging the report pursuant to Indiana Code § 31-33-7-6.5.  Former Director DeMougin concedes that had he understood the burden of proof standard in the administrative hearing he would not have supported the substantiation decision.  Nor have the Defendants offered any explanation why the policy adopted in October 2006 of allowing administrative appeals of substantiation decisions could not have been applied to the Hunts retroactively.[6]

---

[6]  Under the new statute, Ind. Code § 31-33-26-8, an accused perpetrator must request an administrative hearing withing thirty days of being notified that a substantiated report has been entered into the Index, unless he or she can demonstrate that the failure to request a hearing was due to excusable neglect or fraud.  The parties have not addressed the new statutes, which became effective after the filing of their briefs.

Given these circumstances, the court can understand Mrs. Hunt's feelings of being caught in a Kafkaesque nightmare of unchecked bureaucratic power – if the facts are as the Hunts allege.  That said, the issues before the court are straightforward.

### A.  Preliminary issues

Plaintiffs have filed a Request for Oral Argument on the issues raised by Defendants' motion for summary judgment.  The parties' briefs, however, have adequately informed the court of the issues presented by Defendants' motion for summary judgment.  The motion is therefore **DENIED**.

Defendants have raised two preliminary issues in their Reply.  First, they point out that Plaintiffs did not comply with Local Rule 7.1 regarding the length of briefs.  The response was forty-six pages in length, and Plaintiffs did not seek the court's permission to file a brief in excess of thirty-five, as required.  *See* S.D. Ind. L.R. 7.1(b).

While Defendants correctly note the court's discretion to require strict compliance with local rules, *see Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002), the court accepts Plaintiffs' explanation and apology as provided in their Surreply and will consider the response in its entirety.  However, the court considers the Surreply further only to the extent it addresses evidence first cited in Defendants' Reply or objections to admissibility first made in the Reply.  *See* S.D. Ind. L.R. 56.1(d).

Defendants also raise a statute of limitations defense in their Reply.  Generally this court, like other district courts in the Seventh Circuit, will decline to consider

12

arguments first raised in reply that could have been raised in a movant's opening brief. *See County Materials Corp. v. Allan Block Corp.*, 431 F. Supp. 2d 937, 946 (W.D. Wis. 2006) (citing *Marie O. v. Edgar*, 131 F.3d at 610, 614 n.7 (7th Cir. 1997); *Fairley v. Andrews*, 430 F. Supp. 2d 786, 800 n.6 (N.D. Ill. 2006) (citing *Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005)). However, it would still be within the court's discretion to raise the statute of limitations issue *sua sponte*, given that the Defendants asserted this defense in their Answer, thus providing Plaintiffs with some notice and opportunity to respond. (*See* Defs.' Statement Defenses ¶ 19 Answer 6.) *See also Day v. McDonough*, 547 U.S. 198, ---,126 S.Ct. 1675, 1684 (2006) (holding that "courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition" so long as there is fair notice and an opportunity to be heard).

Section 1983 claims are subject to the statute of limitations for personal injuries in the state where the alleged injury occurred and in Indiana, such claims must be brought within two years. *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004). Plaintiffs' Complaint was filed March 14, 2005, which was two years and 10 days after Ms. Wright completed her investigation and determined the abuse allegation against Mrs. Hunt to be substantiated. (*See* Defs.' Ex. E.) However, the filing was still three days shy of two years from the date when Mrs. Hunt was notified of the Department's action, as listed on the Notice of Hearing Decision. (Defs.' Ex. G.) This document does not explain whether March 17, 2003, was the date that Mrs. Hunt learned about the caseworker's substantiation decision, the revocation of her licenses or both. (Defendants did not discuss this date in their statute of limitations argument.)

13

Given that neither party has adequately addressed the statute of limitations issue, coupled with Defendants' failure to raise this argument in its opening brief, the court will not exercise its discretion to consider the defense at this stage.

### B. Federal Civil Rights Claims

As Defendants note, Plaintiffs have not provided any evidence that Mr. Hunt's civil rights were violated.  He faced no criminal charges as a result of the alleged incident.  Nor did Ms. Wright's report accuse him of any misconduct.  (*See* Defs.' Ex. E.) At most, her report suggests that Mr. Hunt assisted his wife at times.  He told the caseworker that he bartered with the alleged victim's father for payment and that the alleged victim's family "owed them" money.  (*Id.* at 4.)  "Mr. Hunt stated that he and his wife have tried to help this family and was upset that they would say that they had hurt their son and make a report."  (*Id.*)

Mr. Hunt's identification with his wife's business interests, however, does not necessarily establish a protected property interest when he was never employed by his wife nor held any child care home licenses.  (Pls.' Br. Opp'n 12.)  Under Indiana law, he was not responsible for her torts or contracts.  Ind. Code § 31-11-7-4.  His stake in this litigation appears to have derived from his relationship with her, not from her business. If so, then Plaintiffs must show that the Defendants' actions were directed at that relationship to allege a violation of his constitutional rights.  *See Thompson v. City of Chicago*, 472 F.3d 444, 452 n.25 (7th Cir. 2006).  All of the Defendants' actions, however, were aimed at Ms. Hunt.  Plaintiffs have not pointed the court to any action

directed at the couple's relationship or any evidence of his ownership in her business. Nor have they contested Defendants' assertion that Mr. Hunt lacked standing to bring a civil rights claim.  For these reasons, the court will dismiss his § 1983 claims.

Nor can Defendants FSSA, the Division of Family and Children, and the Marion County Office of Family and Children, or Defendant DeMougin in his official capacity, be sued for damages under § 1983.  The state cites *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), for the proposition that these Defendants are not "persons" eligible to bring suit under § 1983.  (Defs.' Mem. Supp. 9.)  This is correct with respect to claims for damages.  In claims for injunctive or declaratory relief, a state official in his official capacity is a person under § 1983.  *Will*, 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)) (stating such actions for prospective relief are not considered to be actions against the state for purposes of sovereign immunity analysis).

The issue of whether a state entity is a person under § 1983 usually arises only when a state has allowed itself to be sued in state court.  In federal court, the Eleventh Amendment generally bars a district court's jurisdiction to hear private citizens' claims against state governments unless Congress has specifically abrogated a state's immunity.  Mrs. Hunt's claims against the Department entities and her damage claims against Mr. DeMougin in his official capacity (but not her request for injunctive relief under § 1983)  must therefore be dismissed.

This leaves Mrs. Hunt's § 1983 claims against Mrs. Wright and Mr. DeMougin. Although her lawsuit does not specify whether she is suing these defendants in their individual or official capacity, her lawsuit, in alleging that Mrs. Wright acted with malice, clearly identifies Mrs. Wright as someone whom she is suing personally.  *See* Ind. Code § 34-13-3-5(c).  Her lawsuit against Mr. DeMougin can be read to allege accusations against him personally and in his official capacity as director of a state agency.

Under the doctrine first enunciated in *Ex Parte Young*, 209 U.S. 123, 159-160 (1908), a district court may enjoin a state official or issue declaratory relief.  A suit against a state officer in his or her official capacity is just another way of pleading an action against the state.  *Graham*, 473 U.S. at 165.  So, Mrs. Hunt may seek injunctive relief so long as Mr. DeMougin is the nominal defendant.

### 1. Due Process

The Fourteenth Amendment guarantees individuals the right to due process when a state or local government deprives them of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  Plaintiffs argue that Ms. Wright's failure to follow Department procedures, the lack of any pre-deprivation hearing, and an inability to challenge the Central Client Index substantiation finding denied Mrs. Hunt her constitutional right of procedural due process.  (Pls.' Br. Opp'n 30-32.)  Defendants respond that Mrs. Hunt has not been deprived of any property or liberty interest and that she received due process in her license revocation hearing.  (Defs.' Mem. Supp. 10-13.)

The allegation that Ms. Wright failed to follow Departmental procedures does not, in itself, raise a constitutional concern. *See Hudson v. City of Chicago*, 374 F.3d 554, 564 (7th Cir. 2004); *Pro-Eco, Inc. v. Bd. of Comm'rs*, 57 F.3d 505, 514 (7th Cir. 1995). Nor for that matter does their allegation that Caseworker Wright "rush[ed] to judgment." (Pls. Br. Opp'n 31.)  The Fourteenth Amendment's Due Process Clause does not provide a remedy for a lack of due care, that is, negligence. *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).  The court therefore turns to considering Plaintiffs' claim that Mrs. Hunt was not provided a pre-deprivation hearing.

Due process claims are analyzed in two steps.  First, a court must determine whether the alleged state action has interfered with a person's liberty or property interest. *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)).  If so, the court must determine what procedures were necessary to be constitutionally sufficient. *Id.*  Due process is a flexible concept, and the constitutional requirements are generally determined by balancing the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  These are 1) the private interest affected by the official action, 2) the risk of erroneous deprivation from the procedures used and the probable value, if any, of additional or other procedure, and 3) the government's interest. *Id.*

Mrs. Hunt clearly had a protected property interest in her day care licenses and arguably a liberty interest.  A protected property interest arises when there is a legitimate claim of entitlement to the benefit. *DeSalle v. Wright*, 969 F.2d 273, 277 (7th Cir. 1992).  Here, Mrs. Hunt's state licenses entitled her to operate her day care

17

businesses.  *See, e.g.*, *Easter House v. Felder*, 910 F.2d 1387, 1395 (7th Cir. 1990) (noting that private adoption agency had a property interest in the renewal of its license).  Individuals also have a liberty interest in being able to pursue an occupation. *See Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001).  To the extent that Mrs. Hunt's occupation could be described as the operation of home day cares, rather than just the day care industry in general, the state's revocation of her licenses would foreclose her chosen field.

Defendants maintain that although Mrs. Hunt was threatened with the revocation of her licenses, she received due process because she was granted – and ultimately prevailed at – an administrative hearing.  (Defs.' Br. Supp. 12-13.)

The court agrees that Mrs. Hunt received ample post-deprivation process. She was represented by an attorney who presented evidence and examined witnesses, and she herself testified.  (*See* Pl.'s Br. Opp'n 19.)  Ultimately, the administrative law judge decided that the abuse allegation was not founded and ordered the reinstatement of her licenses.  However, obtaining an adequate post-deprivation hearing does not mean that she received all the constitutional due process to which she was entitled.

In cases involving public employees dismissible only for cause, the Supreme Court and Seventh Circuit have also required pre-termination procedures to protect an employee's interests.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Hudson*, 374 F.3d at 560.  If substantial post-deprivation procedure is available, this pre-termination process need not be extensive.  It may be satisfied merely by notice, an

explanation, and an opportunity to respond.  *Loudermill at 546; see also Gilbert v. Homar*, 520 U.S. 924, 929 (1997).

Although Mrs. Hunt was not a public employee, her private interest was at least as strong as a public employee's and she was therefore entitled to some pre-deprivation process.  And she did receive some.

Ms. Wright spoke with the Hunts by phone and then in person regarding the allegation of abuse.  (Pl.'s Br. Opp'n 14; Defs.' Ex. E 3.)  She provided them with a Notice of Availability, which informed the Hunts of their right to obtain copies of her report and other information.  (Defs.' Ex. E 3.)  She took Mrs. Hunt's statement setting forth her recollection of what happened and recorded that statement in her report. Moreover,  Mrs. Hunt by her own admission was aware by the first meeting that Mrs. Wright might file a determination of substantiated abuse.  (Pls.' Br. Opp'n 14.)  Thus, Mrs. Hunt received notice, was provided an explanation of the allegation and an opportunity to get further information, and was given an opportunity to respond.

The issue is whether this minimal pre-termination notice was enough.  In *Dupuy*, 397 F.3d at 508-09, the Seventh Circuit affirmed a district court's decision that state's minimal pre-deprivation requirements were not adequate to protect child care workers' rights when they were "indicated" for child abuse (the Illinois equivalent of "substantiated").  The court noted that a false report would preclude the workers from employment in their field until the information was expunged.  *Id.* at 505.  At the

minimum, due process in this context demanded a pre-deprivation hearing "by an examiner who did not take part in the investigation."  *Id.* at 507.

Like the recipients in *Dupuy*, Mrs. Hunt was not a public employee, and her alleged injury – the loss of business – resulted from the actions of third parties who became aware of the state action.  She was also a child care worker, for whom an accusation of child abuse could at least foreclose some employment opportunity.  However, the similarity ends there.

In *Dupuy*, the child care workers were effectively precluded by statute and departmental regulations from employment in their field.  *Dupuy*, 397 F.3d at 497-98.  Once an allegation of abuse was "indicated," the report was disclosed to employers and prospective employers, and the employee was presumed to be unsuitable for child care work.  *Id.*  To retain or hire the child care worker, an employer had to request a state review and obtain a state waiver of the presumption of the prospective employee's unsuitability.  *Id.* at 498.

Here, although the state revoked Mrs. Hunt's licenses, she was allowed to remain open – and did remain open – while her appeal was pending.  She may have lost some customers during this period (although there are discrepancies as to how much business fell off).  But this loss stemmed from the injury to her reputation, not directly from the state, which allowed her to continue operating.

Unlike a person's right to pursue the occupation of one's choice, the Supreme Court has held that a person's interest in his or her reputation is not, by itself, a liberty or

property interest.  *Paul v. Davis*, 424 U.S. 693, 711-12 (1976).  The constitutional

protection of due process is triggered only when the defamation is accompanied by

some alteration of legal status, such as the deprivation of a right previously enjoyed.  *Id.*

at 711.  Or, as sometimes phrased, there must be a "stigma plus."  *See Brown v. City of*

*Michigan City*, 462 F.3d 720, 729-730 (7th Cir. 2006).  The Seventh Circuit has held that

when an injury or loss injury relates to a person's employment, the state action must

make it "'virtually impossible'" for the individual to find new employment in their chosen

field to infringe upon a protected liberty interest.  *Dupuy*, 397 F.3d at 503 (quoting

*Townsend v. Vallas*, 256 F.3d at 669)).  Merely showing some impairment to

employment is not sufficient to trigger the constitutional requirements of due process.

*See Siegert v. Gilley*, 500 U.S. 226, 234 (1991).

Here, Mrs. Hunt is self-employed, and a total loss of business would preclude

employment in her chosen field.  But her loss was not total.  The Defendants'

investigation of the abuse allegation and the subsequent proceedings did not make it

impossible for her business to remain open, and thus any damage to her reputation by

the state did not trigger a liberty or property interest.  No additional pre-deprivation

procedure was needed.  Under the facts alleged by the Plaintiffs, she received all the

due process necessary to protect her interest in her day care licenses.

The Plaintiffs also argue that the state violated Mrs. Hunt's rights by not providing

any procedure for challenging Ms. Wright's finding of substantiated abuse or for

removing this finding from the Central Client Index.  (Pls.' Br. Opp'n 29-30.)  Here again,

the primary issue is whether the alleged wrongful conduct implicated a liberty or

property interest.  As noted above, the state has not made it impossible for Mrs. Hunt to continue in her field, so she has not been deprived of an occupational liberty interest. However, the Plaintiffs offer two alternate bases for a liberty or property interest.

First, they argue that the caseworker's report infringed on Mrs. Hunt's liberty interest because the report led to her arrest on a felony child battery charge.  (*Id.* at 34.) Plaintiffs, however, have offered no evidence that this was the case.  Just the opposite. The only evidence before the court reveals that Marion County Sheriff Detective Julie McHenry conducted an independent investigation based on a complaint from the victim's father.  (*See* Defs.' Ex. P.)  Plaintiffs assert that there is a genuine issue as to the actual source of Detective McHenry's report, but an unsupported assertion is not enough to survive summary judgment.  *See Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 793 (7th Cir. 2006) (emphasizing Federal Rule of Civil Procedure 56(e)'s requirement that, at summary judgement, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial").

Plaintiffs' brief and exhibits also imply that the inclusion of Ms. Wright's report in the Central Client Index infringed on Mrs. Hunt's liberty interest in being a foster parent. (*See* Pls' Br. Oppn 6, 24; Pls.' Exs. B, I.)  However, as Defendants correctly point out, the Seventh Circuit has held that foster parenting is not a career, the pursuit of which would be a liberty interest, but a contractual relationship with the state that does not involve a liberty interest.  *Dupuy*, 397 F. 3d at 514-15.  (Nor would state payments to current foster parents qualify as a protected property interest because such payments are only reimbursement for expenses paid on behalf of the foster children.  *Id.* at 515.)

22

Plaintiffs have not shown therefore a due process violation with regard to Ms. Wright's finding of substantiated abuse and its continued inclusion in the Central Client Index.  However, one more due process issue must be addressed.

In their Complaint, the Plaintiffs assert a violation of Mrs. Hunt's right to substantive due process, which forbids a state from infringing "on certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."  *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis in original).  *See also Washington v. Glucksberg*, 521 U.S. 702, 720-1 (1997).  It also protects against arbitrary abuses of power that are so egregious as to shock the conscience.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).  However, any due process claim, substantive or procedural, must still be directed at a deprivation of liberty or property.  *Id.* at 840.  Mrs. Hunt has not shown that she had any fundamental rights or liberty interests at stake.

In summary, the Defendants' actions in investigating the child abuse report and in entering and retaining the caseworker's findings in the Central Client Index did not infringe on any constitutionally protected property or liberty interests of Mrs. Hunt and therefore did not violate the Fourteenth Amendment's guarantee of due process.  A property interest was at stake in the revocation proceedings; however, Mrs. Hunt received all the procedural protection required under the Constitution.  The court will therefore **DISMISS** Plaintiffs' § 1983 claims arising from a violation of the Fourteenth Amendment's Due Process clause.

2.  *Equal Protection*

The Fourteenth Amendment also guarantees, through the Equal Protection

Clause, that no state shall "deny to any person within its jurisdiction the equal protection

of the laws."  U.S. Const. amend. XIV.   By this command, the state must treat similarly

situated persons equally.  *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000

(7th Cir. 2006) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  In determining whether

citizens are similarly situated, a state's power to discriminate depends upon the

classification.  Where no suspect classification such as race, alienage or national origin,

or fundamental right such as freedom of religion or speech is involved, a state need only

have a rational basis for its classification.  *Id.* at 1000-01.

In this case, Plaintiffs' concede that they are not members of any protected class

and that rational basis scrutiny applies.  (Pls.' Br. Opp'n 37.)  They assert that the

Department discriminates between alleged abusers whose reports are only entered into

Central Client Index and who have no rights to get false information removed, and those

whose reports are entered into the Registry and who do have such rights.  (*Id.* at 37-

38.)  They contend the state classification "makes an irrational distinction" by giving

serious offenders an automatic right to expungement while giving no such right to less

serious offenders.  (*Id.* at 39.)

Whether or not this distinction is irrational is somewhat irrelevant because, as

Defendants contend and Plaintiffs admit, no such discrimination actually occurs.  (*See*

Defs.' Reply 14 (citing Statement Material Facts, Defs.' Mem. Supp. 6); Pls.' Brf. Opp'n

24

23.)  While the Department will expunge identifying information from the reports in the Registry, it does not delete the information from the same reports filed in the Central Client Index.  (Coulon Dep. 70-71; DeMougin Dep. 47-48.)  Thus, while persons may have a right to expunge information from the Registry, all persons are treated the same with regard to records elsewhere.

Nonetheless Plaintiffs contend that an equal protection claim will lie.  They assert that the irrational classification still exists because Defendants would be discriminating between the groups but for their failure to follow the Indiana statute then governing expungement, § 31-33-19-8 (repealed 2007).  According to Plaintiffs, this statute required the deletion of all identifying information related to an abuse report, not just from the report entered into the Registry.[7]  (Pls.' Br. Opp'n 41.)  They then argue that Defendants further failed to follow the law by not entering the caseworker's substantiated finding of abuse into the Registry upon her arrest or the filing of criminal charges, as required by § 31-33-8-13.  "The state's failure to submit Mrs. Hunt's report to the State Central Registry, which the statutes clearly required, violated her right to

_____

[7]  Defendants have not stated that this interpretation is correct.  (See Defs.' Reply 14.) The former statute reads in part:

> The division of family and children shall expunge information in a substantiated report contained within the registry as follows:
>> (1) Not later than ten (10) working days after any of the following occurs:
>>> (A) A court having jurisdiction over a child in need of services proceeding determines that child abuse or neglect has not occurred.
>>> (B) An administrative hearing officer under this chapter finds that the child abuse or neglect report is unsubstantiated.
>>> (C) A court having criminal jurisdiction over a case involving child abuse or neglect in which criminal charges are filed and the court:
>>>> (i) dismisses the charges; or
>>>> (ii) enters a not guilty verdict.

Ind. Code § 31-33-19-8(a) (repealed 2007).

due process and equal protection under the law by treating her differently than similarly situated individuals."  (*Id.*)

This convoluted argument weaves a couple of claims together.  The first is Plaintiffs' assertion that the State scheme, as codified but not as enforced, irrationally discriminates between less serious abusers and more serious abusers.  This claim cannot succeed because Mrs. Hunt could have no damages traceable to a discrimination that exists on paper but not in practice.  However, it is really only a setup for the Plaintiffs' second claim, that Defendants' failure to enter the caseworker's report deprived her of a statutory right (but not an actual chance) of getting all of her identifying information erased from all of the Department's records.

This is just a due process claim dressed in the trappings of equal protection, and it must be dismissed for the reasons already discussed.  The Plaintiffs are not really concerned about an "irrational discrimination" that exists only on paper.  They are offended by her inability to appeal the finding.

If any equal protection issue is involved, it involves classifications resulting from the Defendants' failure to enter the caseworker's report into the Registry as allegedly required by law, not from distinctions between less serious and more serious abusers.  Department officials state they do not enter reports into the Registry until a law enforcement agency reports the arrest or charges and requests entry.  (Coulon Dep. 61-62.)  If so, then the real classification at issue is the distinction between those alleged

abusers who have been arrested or charged and reported by law enforcement and those who have been arrested and charged and not reported by law enforcement.

To survive summary judgment, a plaintiff bringing an equal protection claim must offer some evidence that would allow "a reasonable jury to 'eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *RJB Props., Inc. v. Bd. of Educ.*, 468 F.3d 1005, 1009 (7th Cir. 2006) (quoting *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003)).  Or, in "class of one" claims, the plaintiff must bring evidence from which a jury could conclude there was "a spiteful effort to 'get' [the plaintiff] for reasons wholly unrelated to any legitimate state objective."  *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995).

Here the evidence strongly suggests that the Department is seeking to avoid the entry of erroneous information into the Registry (or the blame for doing so) by waiting until it receives a request from a law enforcement agency.  Whether appropriate or even faithful to the Registry statutes, the explanation is rational, and Plaintiffs have not offered any evidence refuting it.  Nor have they offered any evidence showing that Defendants were targeting Mrs. Hunt when they failed to enter the report.  The court will therefore **DISMISS** the Plaintiffs' § 1983 claims arising from a violation of the Fourteenth Amendment's Equal Protection clause.

### C.  State Claims

Normally, when all federal claims have been dismissed, the district court should relinquish jurisdiction over the supplemental state-law claims rather than resolve them on the merits.  *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).  The factors that determine whether supplemental jurisdiction is appropriate –  judicial economy, convenience, fairness, and comity – will usually weigh in favor of dismissal at this stage.  *Wright*, 29 F.3d at 1251.  However, the Seventh Circuit has recognized three circumstances when the balancing of these factors may favor retention.  The circumstances are when (a) the statute of limitations has run, precluding the filing of a complaint, (b) substantial judicial resources have already been expended and remand of the issues to a state court will duplicate those efforts, or (c) "it is absolutely clear" how the pendent claim must be decided because the court has already decided a dispositive issue or because the claim is frivolous.  *Id.*

The first factor is not here, or even normally, a concern because the Indiana "journeys account statute," Ind. Code § 34-11-8-1, generally gives plaintiffs three years to refile claims not dismissed adversely or for negligence in prosecuting.  *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).  The second factor is not in play because few judicial resources have been expended on the Plaintiffs' state law claims.  Nor has the court determined any dispositive issues, including the statute of limitations question.  However, the court must consider if the remaining state claims are obviously without merit.

28

As the Seventh Circuit has observed, there are "various shades of frivolousness." *Wright*, 29 F.3d at 1251.  In close calls, a state claim should be remanded.  *Id.* However, when there are no difficult issues of state law and the disposition of the claim is absolutely clear as a matter of state law, then retention is proper.  *Id.* at 1252 (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993)).

Here Plaintiffs' claims against the individual Defendants, holding them personally liable, present no difficult issues of state law and the disposition is clear.  It is settled law that the Indiana Tort Claims Act shields a government employee from liability for tortious conduct if the employee was acting within the scope of his or her duties.  *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) (interpreting Indiana Code §§ 34-13-3-3 and 34-13-3-5(b) as extending a general grant of personal immunity to government employees acting within the scope of their duties).

To bring a lawsuit against a government employee personally, a plaintiff's lawsuit must allege the employee's conduct was criminal, clearly outside the scope of employment, malicious, wilful and wanton, or calculated to benefit the employee personally, and must provide "a reasonable factual basis supporting the allegations." Ind. Code § 34-13-3-5(c).  However, even when a plaintiff complies with this requirement, the employee is still considered to be acting within the scope of employment and therefore immune if the alleged wrongful conduct was authorized or incidental to conduct that was authorized.  *Bushong*, 790 N.E.2d at 473 (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)).  "Even criminal acts may be considered within the scope of employment if 'the criminal acts originated

29

in activities so closely associated with the employment relationship as to fall within its scope.'" *Id.* (quoting *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989)).

The Plaintiffs in this case attempt to hold Ms. Wright and Mr. DeMougin personally liable by alleging in their complaint that Ms. Wright acted with personal malice, that Mr. DeMougin ratified her behavior and that both intended to harm the Hunts or acted in reckless disregard of the consequences.  (Compl. ¶¶ 28, 30, 35.) Aside from the Complaint, however, Plaintiffs submit evidence and arguments that clearly places the individual Defendants' conduct within the scope of their assigned duties.

They have accused Ms. Wright of misstating facts, failing to properly investigate the complaint, and prejudging Mrs. Hunt.  (*Id.* ¶¶ 10, 11; Tamela Hunt Aff. ¶¶ 6, 8.) However, all of the allegedly wrongful acts occurred in connection with Ms. Wright's assigned duties of investigating complaints and determining whether the accusations were substantiated.  (Even the Complaint's allegation that Mrs. Wright forwarded a copy of her report to the Marion County Prosecutor does not bring the alleged conduct outside the scope of employment.  Indiana Code § 31-33-18-2(3) requires the Department to make such reports available to prosecutors and other law enforcement agencies.)  Likewise all of Mr. DeMougin's acts, in reviewing Ms. Wright's report and responding to Mrs. Hunt's letters fell squarely within his duties as an agency director.

Under these circumstances, the individual Defendants are immune from personal liability, and the Plaintiffs' respective state claims of defamation will be **DISMISSED WITH PREJUDICE.**

This leaves the Hunts' state claims against the Department.  The Indiana Tort Claims Act bars tort claims against the state unless notice is filed with the Office of Attorney General or the state agency involved within 270 days after the loss occurs. Ind. Code § 34-13-3-6.  The Defendants have attached a letter from the Hunts' former attorney acknowledging that he cannot show that Plaintiffs' tort claim notice was mailed. They have also submitted an affidavit from Michael R. Ward, the official record-keeper of tort claim notices sent to the Attorney General's Office.  Mr. Ward states that the Attorney General's Office has no record of receiving any notice from or on behalf of the Hunts.  (Ward Decl. ¶ 4.)

This is powerful evidence, but Defendants have failed to close a door.  They have not shown that the Department did not receive a notice.  The Act only require notices to the Attorney General *or* the agency involved.  This court cannot say as a matter of law the Hunts are unable to bring state tort claims against the Department.[8]

--------

[8]  Even if it later turns out, as appears likely, that the Hunts' failure to file a tort claim notice bars them from holding the Defendants liable in this matter, it would not bar them from filling a claim for defamation arising from another communication (assuming that timely proper notice is filed) in which the Department informed a third party that Mrs. Hunt was involved in an act of substantiated child abuse.  An administrative law judge's determination that the abuse was unfounded would be credible evidence that Ms. Wright's finding was erroneous and the Department knew this.  The Department retains the report at its peril.

The court will therefore **REMAND** the Hunts' claims of defamation and intentional infliction of emotional distress against the Indiana Family & Social Services Administration, the Division of Family & Children, and the Marion County Office of Family & Children.  The court will also **REMAND** their request for injunctive relief under state law.

## IV.  CONCLUSION

For the reasons discussed above, the court **DENIES** Plaintiff's Request for Oral Argument (Doc. No. 53) and **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment (Doc. No. 43).

Defendants' motion is **GRANTED** as to Plaintiffs' federal claims, pursuant to § 1983, seeking damages and injunctive relief from all Defendants for alleged violations of their Fourteenth Amendment rights to due process and equal protection under the law. The motion is granted also as to Plaintiffs' state claims against Defendants Wright and DeMougin for defamation and intentional infliction of emotional distress.  These federal and state claims will be **DISMISSED WITH PREJUDICE**.

Defendants' motion is **DENIED**, however, as to Plaintiffs' claims of defamation and intentional infliction of emotional distress against the Indiana Family & Social Services Administration, the Division of Family & Children, and the Marion County Office of Family & Children and their request for injunctive relief under state law.

However, the court no longer has any basis for retaining jurisdiction and will therefore

**REMAND** these claims to Marion Superior Court, County of Marion, Indiana.

Entry of Judgment and Remand will be by separate order.

ALL OF WHICH IS ENTERED this 14th day of August 2007.


_____

John Daniel Tinder, Judge
United States District Court



Copies to:

Magistrate Judge William T. Lawrence

John Henry Shean
SHEAN LAW OFFICES
jshean@sheanlaw.com

Eric James Beaver
INDIANA STATE ATTORNEY GENERAL
eric.beaver@atg.in.gov

Juliana B. Pierce
INDIANA STATE ATTORNEY GENERAL
Julie.Pierce@atg.in.gov